MISSISSIPPI CENTRAL RAILROAD COMPANY *v*. McWILLIAMS.

[72 South. 925.]

RAILROADS. *Injuries. Persons on track. Wood thrown by fireman.*

> Where plaintiff was injured while walking on defendant's right of way by being struck by a stick of wood which was thrown off the tender by a fireman for his own use and which wood was being carried on the tender without defendant's knowledge or consent and for the fireman's private benefit, the defendant, railroad company, was not liable for damages so inflicted since the fireman was acting entirely outside of the scope of his employment.

APPEAL from the circuit court of Forest county.
HON. PAUL B. JOHNSON, Judge.

Suit by Dave McWilliams against the Mississippi Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*S. E. Travis*, for appellant.

We deem it unnecessary to deal with the assignments of error *seriatim* or to discuss all the points raised. The fourth, ninth, tenth, eleventh, and twelfth assignments deal with the motion for a peremptory instruction and the sufficiency of the evidence to support a verdict, and may be considered together. We submit

that the said motion for a peremptory instruction should have been sustained.

In the first place, the act complained of was not that of the appellant but that of the fireman in his individual capacity and for a purely personal object. The testimony shows without any contradiction and absolutely that appellee's injury resulted from the act of the fireman on the train in question while engaged in his own personal enterprise, throwing wood from the tender for his private use, without the knowledge or consent of the appellant, and the law is well settled that the master is not liable to a servant or any third party injured in such case. 6 Labatt's Master & Servant (2 Ed.), p. 6906; *P. & Ft. W. & C. R. R. Co.* v. *Mauer,* 21 Oh. St. 421; *Burke v. Shaw,* 59 Miss. 443; *I. C. R. R. Co.* v. *Latham,* 72 Miss. 32; *Sullivan* v. *Morris,* 109 Ill. App. 650; *Goodloe* v. *Memphis & C. R. R. Co.,* 107 Ala. 233; *R. R. Co.* v. *Douglass,* 69 Miss. 723; *Cotton Warehouse Co.* v. *Poll,* 78 Miss. 147; *Walton* v. *Sleeping Car Co.,* 2 N. E. 101.

The following authorities are to the same effect: "And a servant, though in charge of a dangerous agency, who acts without any reference to the service for which he is employed, and not for the purpose of performing the work of his employer, but to effect some independent purposes of his own, does not render his master responsible either for his wrongful act or omission. *Stephenson* v. *Southern P. Co.,* 93 Cal. 558, 15 L. R. A. 475, 27 Am. St. Rep, 223, 29 Pac. 234; *Chicago B. & Q. R. Co.* v. *Epperson,* 26 Ill. App. 79;" 10 L. R. A. (N. S.) note, page 396.

Where drills were carried on train by the baggage man merely to accommodate persons who had no contract relations with the carrier, the carrier receiving no benefit from the transportation and not knowing of or consenting thereto, and the baggageman threw such drills from the train and struck and injured the per-

son to whom they were sent, there was no liability. *Walker* v. *R. R. Co.,* 42 Am. St. Rep. 547.

*Currie & Currie,* for appellee.

The appellant assumes that the act complained of was that of the servant, wholly disconnected with the discharge of performance of the master's business. The evidence in this case establishes an entirely different contention. The fireman was in the performance of his duties, and was on duty in the actual discharge of his master's business at the time of the commission of the act producing the injury. Under these conditions, the act of the servant, whether within or without the scope of his employment, is the act of the master, or at least, establishes such a state of fact or condition at the time of the injury as to hold the master liable in damages. We will not attempt to criticize each case cited by appellant, but from a reading of these authorities, it is readily seen that not a single one of them is applicable to the case at bar. With reference to when the servant will be held to be acting within or without the scope of his employment under certain conditions, has been well discussed in the case of *Richburger* v. *American Express Company,* 73 Miss. 161, 18 So. 922; *Barmore* v. *V. S. & P. R. Co.,* 85 Miss. 426, 38 So. 210; *McManus* v. *Crickett,* 1 N. E. 106; *Railroad Company* v. *Young,* 21 Oh. St. 518.

There is another principle of law decided by the court in this opinion, which we insist is controlling in this case, that is with reference to the master entrusting to his servant machinery or appliances inherently dangerous within themselves. Upon this point the court said: "There is another theory developed by this record, which the appellant was entitled to have submitted to the consideration of the jury. It arose out of the well-established principle of law that the master who entrusts the custody and control of dangerous appliances

or agencies to the management of his servants will not be permitted to avoid responsibility for injuries inflicted thereby on the plea that the servant in the particular act complained of, was acting outside of the scope of his employment.''

We especially direct the court's attention to this case, which we deem not necessary to quote from further. It is clearly established by this opinion that for the master to escape liability on the ground that the servant was acting beyond the scope of his employment is an exception to the rule. The true rule in such cases imputes liability to the master, and this rule arises from the absolute duty which is owing to the public by those who employ in their business dangerous agencies or appliances, engines or instruments liable, if negligently managed, to result in great damages to others.

By reference to the opinion, it will be seen that Judge WHITFIELD rendered the opinion in the case of *Canton Cotton Warehouse Company* v. *Pool,* and that the same Justice rendered a dissenting opinion in the case of *Barmore* v. *American Express Company,* above cited, citing in his dissenting opinion, *R. R. Co.* v. *Latham,* 72 Miss. 32, *Richburger* v. *V. S. & P. R. Co.,* 73 Miss. 161, and *Canton Cotton Warehouse Company* v. *Pool.* We call the court's attention to this dissenting opinion for this reason: that as contended by appellee these cases are not analogous to the case at bar, and the principles controlling these cases do not control the case at bar. Further, if the court should hold, as counsel for appellant contends, that this case is controlled by the same principles as are involved in the cases referred to in the dissenting opinion of Justice WHITFIELD, then we say: ''These cases have been overruled by the opinion of the court in the Richburger case.''

The evidence in the case shows conclusively that Knight, the fireman was in the discharge of his duties at the time he himself claims to have thrown the wood from the tender of the engine, and that the train was

112 Miss.—16

running at a rate of eight or ten miles per hour. It has been repeatedly held by the courts of the country that a slight deviation from the master's duties by the servant will not relieve the master of responsibility.

The case of *Ritchie* v. *Waller,* 38 Am. St. Rep. 361, states the rule to be that in cases of deviation, the mere departure by the servant from the strict line or course of his duty, even for a purpose of his own, does not in and of itself constitute such a departure from the master's business as to relieve him of responsibility.

This was a case in which the servant, who was driving the wagon for his master, deviated from the route prescribed by his master, and left the team standing on the street, and went into a shop to have his shoes repaired, a purpose of his own, and while there the team of horses ran away, the wagon coming in contact with another wagon, producing the injury. The court held that the master was liable. The court said in the course of its opinion: "If the servant in going extra *viam,* is really engaged in the execution of the master's business, within the scope of his employment, it is immaterial that he join with it some private business of his own." We call the court's especial attention to this decision and the cases referred to. The court cited *Sleath* v. *Wilson,* 9 Car. & P. 607, wherein the master was held liable for the negligent act of his servant, who, after having set his master down, drove around to deliver a parcel of his own, and did not drive directly where he had been ordered to go, and other cases cited in this opinion.

In the case of *T. P. R. R. Company* v. *Scoville,* 27 L. R. A. 179, the engineer and fireman in charge of the railroad locomotive were held to be acting within the scope of their employment in blowing the whistle wantonly and mischievously to freighten the horse which a person is driving near the track, so as to render the company liable for the injury of the driver. This is

a well considered case and we submit establishes conclusively the liability of the defendant in the case at bar, since the jury returned a verdict against it.

In rendering the opinion the court quotes from the case of *Philadelphia & R. R. Co.* v. *Derby*, 55 U. S. —, 14 How. 468, 14 L. Ed. 502, wherein the court said: "Although among a number of cases of this subject-matter, some may be found in which the courts have made some nice distinctions, which are rather subtle and astute as to when the servant may be said to be acting in the employ of the master, yet we find no case which asserts the doctrine that the master is not liable for the acts of the servant in his employment, when the particular act causing the injury, was done in disregard of the general orders or special command of the master. Such qualifications of the maxim *'respondeat superior,'* would, in a measure, nullify it. A large portion of the accidents on railroads are caused by the negligence of the servants or agents of the company. Nothing but the most stringent enforcement of discipline and the most exact and perfect obedience to every rule and order emanating from the superior can insure safety to life and limb and property. Entrusting such a powerful and dangerous engine as a locomotive to one who will not submit to control and render implicit obedience to orders, is itself an act of negligence—the *causa causans* of the mischief—while the proximate causes or the *ipsa negligentia* which produce it may truly be said, in most cases to be a disobedience of orders by the servant so entrusted. If such disobedience of orders can be set up by the railroad company as a defense when charged with negligence, the remedy of the injured party would in most cases be illusive, discipline would be relaxed, and dangers to life and limb of the traveler greatly enhanced." Further on in its opinion the court said: "It is contended that in this act the servants were not in the master's service, because not employed to blow the whistle wantonly and mischievously, to frighten

travelers or their horses; that contention is fully answered by the supreme court of Illinois; that these servants are not employed to do any negligent or unlawful act, and such a test would exempt the company from liability for all affirmative acts of these servants, violating the rights of others.'' We cite upon the same proposition: 14 Am. Rep. 114; also, 24 Am. Rep. 296.

POTTER, J., delivered the opinion of the court.

The appellee in this case, plaintiff in the court below, recovered a judgment for two hundred and fifty dollars against the appellant, defendant in the court below, on account of personal injuries sustained by him. The plaintiff in this case alleged and proved that he was walking on a path used a number of years by the general public as a footpath across the railroad right of way of the defendant company, and that when he reached a point on the railroad where the said path crosses same a worktrain of the appellant was returning to the city of Hattiesburg, and the fireman on said train, for his own private use, and without the knowledge or consent of appellant or any of its agents, threw some wood from the tender of the engine in question opposite his home, and, without seeing or knowing where the appellee was, struck him with the wood and injured him. It appears without contradiction in this record that the fireman was engaged in an enterprise of his own when he was hauling the wood on the tender of the engine. He had done this only two or three times previous to this occasion, and the conductor of the train did not know that the fireman was hauling wood on the tender of the engine, and, further, that this act on the part of the fireman was in violation of the rules of the railroad company, and the fireman was ordered to stop this practice, if such it had become, as soon as the conductor found out about it, at the time the accident occurred.

This case must be reversed. The fireman on defendant's engine was acting entirely outside of the scope of his employment. The enterprise he was engaged in was his own. He was hauling wood for his own use, without the knowledge or consent of defendant's agents. *Burke* v. *Shaw,* 59 Miss. 443, 42 Am. Rep. 370; *Railroad Co.* v. *Latham,* 72 Miss. 32, 16 So. 757; *Railroad Co.* v. *Douglass,* 69 Miss. 723, 11 So. 933, 30 Am. St. Rep. 582; *Cotton Warehouse Co.* v. *Pool,* 78 Miss. 147, 28 So. 823, 84 Am. St. Rep. 620.

*Reversed and judgment here for appellant.*